IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| ERIC R. GOODS, | * |
| Plaintiff, | * |
| v. | *   Civil Case No. SAG-19-2519 |
| MAYOR AND CITY COUNCIL OF BALTIMORE, | * |
| Defendant. | * |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Plaintiff Eric R. Goods ("Goods") filed an Amended Complaint against the Mayor and City Council of Baltimore City ("the City"), alleging discrimination, hostile work environment, and retaliation in violation of various federal statutes. ECF 21. Presently pending is Defendant's Second Motion to Dismiss for Failure to State a Claim ("the Motion"), ECF 19.[1] Goods, who appears *pro se*, filed an Opposition in response to the Motion, ECF 23, but no reply was filed. For the reasons set forth herein, the City's Motion to Dismiss will be GRANTED in part, and DENIED in part.

### I. BACKGROUND

The following facts are derived from the Amended Complaint, and are taken as true for the purposes of adjudicating this Motion. Goods began working as a GIS Technician for the City, in its Department of Transportation-Conduit Division, in 2009. ECF 21 ¶ 11. He remained in the

---

[1] Defendant's First Motion to Dismiss was denied as moot, because Goods sought leave to file an Amended Complaint. ECF 17. The merits of Defendant's arguments as to the adequacy of Goods's factual allegations have not previously been addressed by the Court.

role of GIS Technician through at least 2019. *Id.* During the course of Goods's employment, the City created a new classification for GIS workers, GIS Analyst, which was considered to be a "promotion" from GIS Technician. *Id.* ¶¶ 18-19. Goods was denied an interview for the first two GIS Analyst positions, and two applicants who were younger and less qualified than Goods were selected for the jobs.[2] *Id.* ¶¶ 20. Goods submitted a protest to the Baltimore City Department of Human Resources ("Human Resources"), but received no response.[3] *Id.* ¶ 20.

Months later, a newly promoted GIS Analyst took over lead supervisory duties for all of the consolidated GIS personnel. *Id.* ¶ 21. Goods informed upper management that he and another GIS Technician had to work outside of their job description and perform tasks that "exceeded the level of responsibility of the lead GIS analyst," which he deemed to be a "classification error" warranting an increase in their pay. *Id.* ¶ 22. Goods submitted a request for an "Out-of-Title" pay adjustment, and was told that the Assistant Director of Transportation had ordered a "desk audit" to assess the issue. *Id.* ¶¶ 22-23.

One year later, Human Resources determined that the GIS personnel had been properly classified. *Id.* ¶ 25. Following advice from Human Resources, Goods filed a "Request for Reconsideration," but he never received a response. *Id.* ¶ 26. In the same time period, Goods

---

[2] The Amended Complaint does not clearly specify the races of those selected, though it states "[n]either position was filled by a qualified African-American with more seniority," which can be interpreted in any number of ways. *Id.* ¶ 20. The following sentence suggests that at least one of the candidates selected was white. *Id.* ("Both were internal hires within the Baltimore City Department of Transportation with the least qualified white candidate being a member of the Information Technology Division.")

[3] Goods does not specifically allege that his "protest" included allegations that he was denied an interview as a result of his age or race, but for the purposes of this Motion, this Court will draw that inference in Goods's favor based on the context in which Goods references said "protest." *See id.* ¶ 20.

learned that the younger, non-African American GIS Analysts had been reclassified and "promoted to the Information Technology Specialist series." *Id.* ¶ 25.

Goods's then-supervisor, Ms. Hollins, "became increasingly hostile and demeaning often threatening termination" and began reducing Goods's substantive job responsibilities, including imposing restrictions on his ability to work directly with conduit managers. *Id.* ¶ 27. Hollins hired a consultant Conduit-IT coordinator "non-competitively through a firm of her choosing" and required Goods "to explain and/or teach basic elements of the assignments" because the coordinator did not understand the concepts. *Id.* ¶ 27.

Sometime thereafter, Goods experienced a work-related injury, after which "demeaning comments regarding age became more frequent." *Id.* ¶ 28. Goods alleges that he "sought to seek opportunities in other units of the City of Baltimore with no success."[4] *Id.* After discovering that all GIS Analysts hired in the City "were younger non-African Americans," Goods filed discrimination complaints with the Department of Transportation and the Maryland Civil Rights Commission. *Id.*

Goods alleges that "[d]uring the months following" his complaints, "he was relegated to preforming [sic] non-essential assignments, trainings denied and subjected to verbal abuse by members of the I.T. unit such as being called the 'Wal-Mart Greeter' and 'Old-Fart.'" *Id.* ¶ 29. Sometime thereafter, Hollins left the unit, and Goods received notification that he had been selected to interview for one of two newly created GIS Analyst positions for the Conduit Division. *Id.* ¶ 30. Goods alleges that the interview was skewed to test subjects unrelated to his job and thus the "process was simply a pretext for the appearance of providing the promotional opportunity

---

[4] Goods does not specifically allege whether he applied for any positions or, if he did, whether any of the decisionmakers overlapped with those in his department.

after the discrimination complaint was filed." *Id.* ¶ 31. He was notified several months later that he had not been selected, and learned that after he and another candidate had been interviewed, the positions were re-announced and two younger candidates were hired. *Id.* ¶¶ 33-34.

In the following months, Conduit GIS personnel were again reassigned to a newly created Conduit Division, and another attempt at reclassification of the remaining GIS Technicians was made. *Id.* ¶ 35. As of the time of the Amended Complaint, no pay adjustment had been approved. *Id.*

## II. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(6), a complaint may not be dismissed unless it appears to a certainty that the non-moving party cannot prove any set of facts in support of his claim that would entitle him to relief. *See* Fed. R. Civ. P. 12(b)(6). When ruling on such a motion, the court must "accept the well-pled allegations of the complaint as true" and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997) (citing *Little v. Federal Bureau of Investigation*, 1 F.3d 255, 256 (4th Cir.1993)).

To survive a motion to dismiss, the factual allegations of a complaint, assumed to be true, "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The plaintiff's obligation is to show the "grounds of his entitlement to relief," offering "more than labels and conclusions." *Id.* (internal quotation marks and alternations omitted). It is not sufficient that the well-pleaded facts suggest "the mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Rather, to withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," meaning that the court could draw "the reasonable inference

that the defendant is liable for the conduct alleged." *Id.* at 678 (internal quotations and citation omitted). If a plaintiff is proceeding *pro se*, as Goods is here, the complaint is held to less strict standards. *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam). Such a case "should only be dismissed if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* at 520-21 (citations and internal quotation marks omitted).

### III. DISCUSSION

#### A. Hostile Work Environment Claims

In Counts I and IV,[5] Goods alleges that the City violated Title VII and the ADEA by subjecting him to a hostile work environment, which exists where "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (internal quotation marks omitted). To establish a claim under Title VII or the ADEA for a hostile work environment, "a plaintiff must show that there is (1) unwelcome conduct; (2) that is based on the plaintiff's [race or age]; (3) which is sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment; and (4) which is imputable to the employer." *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264 (4th Cir. 2015) (quoting *Okoli v. City of Balt.*, 648 F.3d 216, 220 (4th Cir. 2011) (alteration and internal quotation marks omitted)); *see also Baqir v. Principi,* 434 F.3d 733, 745-46 (4th Cir. 2006) (summarizing the same factors under the ADEA).

---

[5] For clarity, Plaintiff's Complaint does not include a Count V and thus no Count V will be addressed in this opinion.

Other than some cursory allegations of unwelcome conduct, Goods has failed to plead facts establishing any of the other elements. Goods alleged that "demeaning comments regarding age became more frequent," ECF 21 ¶ 28, and that unspecified "members of the I.T. unit" called him derogatory age-based names and mentioned "retirement" or "the horse and buggy days" when responding to his questions. *Id.* ¶ 29. Goods does not allege any specific comments, made by anyone at any time, relating to his race. He generally alleges that he was subjected to "admonishments, verbal abuse and harassment," but simple mistreatment or rude conduct does not suffice to support a hostile work environment claim. *See EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315-16 (4th Cir. 2008) ("[C]omplaints premised on nothing more than rude treatment by [coworkers], callous behavior by [one's] superiors, [or] a routine difference of opinion and personality conflict with [one's] supervisor" do not suffice) (internal citations and quotations omitted); *see also Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (finding a workplace dispute and "some perhaps callous behavior by her superiors" insufficient for a plaintiff to establish severe or pervasive activity, even at the Rule 12(b)(6) stage); *Khoury v. Meserve*, 268 F. Supp. 2d 600, 614 (D. Md. 2003) (determining that "disrespectful, frustrating, critical, and unpleasant" workplace interactions do not create a hostile work environment). Goods simply does not plausibly link the mistreatment he received to his age or his race.

Additionally, the few age-related comments Goods does specifically allege are not sufficiently "severe" or "pervasive" to plausibly state a claim for hostile work environment. He does not allege the dates or frequency of such comments, or any particular concentration over a limited time frame, sufficient to meet the "high bar in order to satisfy the severe or pervasive test." *Sunbelt Rentals, Inc.*, 521 F.3d at 315; *see also Dangerfield v. Johns Hopkins Bayview Med. Ctr., Inc.*, Civil No. JKB-19-155, 2019 WL 6130947, at *3 (D. Md. Nov. 19, 2019) (stating, with respect

6

to general allegations of consistent "condescending and abusive language and behavior," "[w]ithout details about the nature of the remarks and behavior at issue, it is impossible for the Court to determine whether the behavior she complains of would be seen as objectively hostile by a 'reasonable person'"); *Lenoir v. Roll Coater, Inc.*, 841 F. Supp. 1457, 1462 (N.D. Ind. 1992) (finding plaintiff's allegations of being reprimanded more severely than co-workers, without reference to exact dates, to be insufficient to support a harassment claim), aff'd, 13 F.3d 1130 (7th Cir. 1994).

Finally, Goods has not plausibly alleged that the age-related comments were imputable to his employer. "If the harasser is a supervisor, then the employer may be either strictly or vicariously liable," depending on whether the harassment culminates in a tangible employment action. *Strothers v. City of Laurel, Maryland*, 895 F.3d 317, 333 (4th Cir. 2018). In contrast, harassment by a co-worker or a third-party, resulting in a hostile work environment, can be imputed to an employer only "if the employer knew or should have known of the harassment and failed 'to take prompt remedial action reasonably calculated to end the harassment.'" *Freeman v. Dal-Tile Corp.*, 750 F.3d 413, 422-23 (4th Cir. 2014) (quoting *Amirmokri v. Baltimore Gas & Elec. Co.*, 60 F.3d 1126, 1131 (4th Cir. 1995)) (internal quotations omitted). Goods does not even allege who made the age-related remarks, and certainly makes no allegations that the remarks were made by supervisors or that he reported the offensive comments to supervisory staff. Conversely, the allegations that *are* linked to a supervisor, Hollins, are insufficiently particular or related to age or race to sustain a hostile work environment claim. ECF 21 ¶ 27 (stating broadly that Hollins "became increasingly hostile and demeaning often threatening termination").

Ultimately, taking all of Goods's current allegations as true and construing them liberally, he has not plausibly pled that he was subject to a hostile work environment attributable to the City.

Accordingly, Counts I and IV (to the extent it presents a hostile work environment claim) will be dismissed without prejudice.[6]

### B. Status-Based Discrimination Claims

Goods also alleges claims for race-based discrimination in Counts II and VI, under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, and 42 U.S.C. § 1981, along with a claim in Count IV for age-based discrimination under the ADEA. ECF 21 ¶¶ 48-52, 64, 79-84. Under Title VII, it is unlawful for an employer to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . race." 42 U.S.C. § 2000e-2(a)(1). Relevant to Goods's claims here, "in order to prove a prima facie case of discriminatory failure to hire or promote under Title VII, a plaintiff must prove that: (1) he is a member of a protected group; (2) he applied for the position in question; (3) he was qualified for the position; and (4) he was rejected for the position under circumstances giving rise to an inference of unlawful discrimination." *Brown v. McLean*, 159 F.3d 898, 902 (4th Cir. 1998); *see also Henson v. Liggett Grp., Inc.*, 61 F.3d 270, 274 (4th Cir. 1995) (listing similar elements for a prima facie case of failure to hire under the ADEA); *White v. BFI Waste Servs.,* 375 F.3d 288, 295 (4th Cir. 2004) (requiring the same elements be shown to establish a *prima facie* case of racial discrimination whether under Title VII or § 1981).

To state a claim for status-based discrimination, a plaintiff may offer direct evidence that his employer discriminated against him, *see Price v. Thompson*, 380 F.3d 209, 212 (4th Cir. 2004),

---

[6] Count IV can be fairly read to incorporate both a status-based ADEA claim and a claim for a hostile work environment based on Goods's age. ECF 21 ¶¶ 62-78. It also contains language suggesting a claim for constructive discharge. *See id.* ¶ 65 ("A reasonable person in Plaintiff's position would have felt compelled to resign under these conditions."). Given that Goods does not allege that he resigned or otherwise terminated his employment, to the extent the Amended Complaint contains a claim for constructive discharge, it is dismissed.

or he may offer evidence of a *prima facie* case of discrimination by showing that he is a member of a protected class, that he was meeting the reasonable expectations of his employer, that he suffered an adverse employment action, and that he was treated differently from similarly situated employees outside the protected class. *See Coleman v. Maryland Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), *aff'd sub nom. Coleman v. Court of Appeals of Maryland*, 132 S. Ct. 1327 (2012); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Notably, in *Swierkiewicz v. Sorema*, the Supreme Court held that "an employment discrimination plaintiff need not plead a *prima facie* case of discrimination . . . to survive a motion to dismiss," as requiring a plaintiff to do so would impose a "heightened pleading standard" at odds with the liberal pleading requirements mandated by Federal Rule of Civil Procedure 8(a)(2). 534 U.S. 506, 512, 515 (2002); *see* Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief, and a demand for the relief sought.").

Following *Swierkiewicz*, the Court clarified that although a plaintiff is not required to plead facts to support a *prima facie* claim for employment discrimination, "a plaintiff's obligations to provide the 'grounds of his entitlement to relief' requires more than . . . a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Papasan v. Allain*, 478 U.S. 265, 286 (1986) (holding that, on a motion to dismiss, courts are not "bound to accept as true a legal conclusion couched as a factual allegation."). Thus, while Goods is not required to plead facts to support a *prima facie* claim of discrimination, it must still be determined whether his Amended Complaint comports with the "ordinary rules for assessing the sufficiency of a complaint," *see Swierkiewicz*, 534 U.S. at 511, by pleading facts to plausibly support a claim of discrimination.

Taking all of Goods's allegations as true, construing his pleading liberally because he is self-represented, and drawing all inferences in his favor, he has stated a plausible claim that he was denied promotion to the GIS Analyst positions on the basis of his race or age. There is no dispute that he is a member of protected classes as to both race and age. ECF 19-1 at 7. He has alleged that he applied, on at least two occasions, for GIS Analyst positions, and that he was qualified for the positions as a result of his extensive experience in the Conduit Department. ECF 21 ¶¶ 20-21, 30. Finally, he has alleged facts plausibly suggesting that he was denied the position for discriminatory reasons: the fact that less experienced, younger persons were selected to fill the positions, that those persons were not African American, *id.*, and that only older, African American employees remained in the GIS Technician roles, *id.* at ¶ 49, 66. Thus, Goods's claims of status-based discrimination in promotional decisions survive dismissal.

C. **Retaliation Claims**

Counts III and VII of Goods's Amended Complaint allege claims for retaliation under Title VII and § 1981 42 U.S.C. § 2000e-3(a), which prohibits employers from retaliating against employees who oppose unlawful employment practices, such as prior discrimination. 42 U.S.C. § 2000e-3(a). Retaliation requires evidence "(1) that [plaintiff] engaged in a protected activity, (2) that the employer took a materially adverse action against him, and (3) [that] there is a causal connection between the protected activity and the adverse action." *Perkins v. Intern. Paper Co.*, 936 F.3d 196, 213 (4th Cir. 2019). As with his claims for status-based discrimination, Goods fails to allege any direct evidence to substantiate retaliation, such as comments made to him by supervisors or hiring authorities to suggest that they were aware of, or acting in reaction to, his complaints.

Beginning, though, with the first factor, section 3(a) of Title VII, which addresses retaliation claims, references "oppos[ition] to any practice," or "participation in any manner in an investigation, proceeding, or hearing" to explain what constitutes a protected activity. *Id.* In considering whether a plaintiff's action constitutes "opposition activity" that would be protected, the Fourth Circuit has stated that "[o]pposition activity encompasses utilizing informal grievance procedures as well as staging informal protests and voicing one's opinions in order to bring attention to an employer's discriminatory activities." *Laughlin v. Metro Wash. Airports Auth.*, 149 F.3d 253, 259 (4th Cir. 1998); *see also id.* ("Whether an employee has engaged in protected opposition activity, turns upon balancing 'the purpose of the Act to protect persons engaging reasonably in activities opposing . . . discrimination, against Congress's equally manifest desire not to tie the hands of employers in the objective selection and control of personnel.'") (ellipsis in original).

Construing Goods's Amended Complaint liberally, his protest of the decision not to interview him for the original GIS Analyst positions, ECF 21 ¶ 20, likely constitutes protected activity. His subsequent request for an Out-of-Title pay adjustment for the work he was performing, which is not alleged to have been expressly tied to his race or age, likely does not. ECF 21 ¶ 2226. Even considering the Fourth Circuit's overall preference for liberal construction of what constitutes "opposition activity," there must be some allegation of discrimination involved in the activity for it to plausibly be "opposition" to discrimination.

Even assuming Goods has alleged that he engaged in protected activity, he has not alleged any plausible connection between that activity and any adverse action taken against him. Initially, he has not alleged that the decisionmakers for the GIS Analyst promotion were even aware of the

11

complaints he had made (except Braxton, who as manager of the Conduit Division actually supported Goods's reclassification request).

Finally, Goods's Amended Complaint provides almost no dates for any actions, which could potentially establish temporal proximity between his alleged protected activity and the City's decisions to select other candidates for promotion. *Cf. Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (noting that "mere" temporal proximity between an employer's knowledge of an employee's protected activity and an adverse action must be "very close" to show causality). In the absence of any direct evidence of causal connection between the protected activity and the failure to promote or any other adverse employment action, and the absence of any dates allowing an inference to be drawn from close temporal proximity, Goods has not managed to "nudge his claim" for retaliation "across the line from conceivable to plausible." *See Twombly*, 550 U.S. at 570. Accordingly, on the facts pled, the City's motion to dismiss will be granted as to Goods's retaliation claims.

## IV.   CONCLUSION

For the reasons set forth above, the City's Second Motion to Dismiss, ECF 19, is GRANTED in part and DENIED in part. Counts I, III, and VII, along with the hostile work environment and constructive discharge claims in Count IV, are dismissed without prejudice. Goods's claims that he was passed over for promotion on the basis of his race or age (Counts II, VI, and the relevant portions of Count IV) survive dismissal. A separate Order follows.

Dated: October 15, 2020                                                                              /s/
                                                                                            Stephanie A. Gallagher
                                                                                            United States District Judge