## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| ERIC R. GOODS, | * | |
| Plaintiff, | * | |
| v. | * | Civil Case No. SAG-19-2519 |
| MAYOR AND CITY COUNCIL OF BALTIMORE, | * | |
| Defendant. | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

### MEMORANDUM OPINION

This case involves race discrimination claims brought by self-represented Plaintiff Eric R. Goods ("Goods") against the Mayor and City Council of Baltimore City ("the City"). The City has filed a Motion for Summary Judgment, ECF 30. I have reviewed that motion and the associated exhibits and briefing, including the supplements filed after Goods was awarded additional time for discovery. ECF 32, 34, 35, 36, 46, 48. For the reasons set forth herein, the City's Motion for Summary Judgment will be GRANTED.

### I.    PROCEDURAL POSTURE

On October 19, 2020, this Court entered an opinion and order granting in part and denying in part the City's motion to dismiss Goods's claims. ECF 24, 25. This Court entered a scheduling order on November 2, 2020, which set a discovery deadline and a corresponding status report date of February 1, 2021. ECF 27. The scheduling order also provided that motions for summary judgment would be due on March 3, 2021. *Id.*

On the appointed date, February 1, 2021, the City filed a status report indicating that Goods had represented that he had not received the scheduling order.  ECF 29.  Goods also called the Clerk's Office on the same date, resulting in the scheduling order being re-mailed to his address of record.  Nevertheless, Goods did not file anything further with the Court.  He did, however, send his first discovery requests to the City on January 29, 2021.  ECF 33-1.  The City responded by letter on February 8, 2021, telling Goods that the City was not required to respond to the discovery requests because they received the requests after the February 1, 2021 discovery deadline.  ECF 34-1.  On February 16, 2021, Goods served a Motion to Compel Discovery on the City but did not file it with the Court and did not seek an extension of the discovery deadline.  ECF 33.

On March 3, 2021, the City filed its motion for summary judgment.  ECF 30.  More than a month later, on April 6, 2021, Goods filed a Motion to Compel Discovery along with his opposition to the City's summary judgment motion.  ECF 33, 34.  On May 4, 2021, this Court granted Goods's Motion to Compel Discovery in part, ordering the City to provide some additional written discovery and inviting the parties to supplement their summary judgment filings.  ECF 37.  After several status reports, both Goods and the City filed supplemental filings in support of their respective positions on summary judgment.  ECF 46, 48.

## II.     FACTS

The following facts are viewed in the light most favorable to Goods, the non-moving party, for the purposes of adjudicating this Motion.  Goods began working as a geographic information systems ("GIS") Technician for the City, in its Department of Transportation-Conduit Division, in 2009.  ECF 21 ¶ 11.  He remained in the role of GIS Technician through at least 2019.  *Id.*  In or about 2013, the City created a new classification for GIS workers, GIS Analyst, which was considered to be a "promotion" from GIS Technician.  *Id.* ¶¶ 18-19.  Goods was denied an

interview for the first two GIS Analyst positions, and two applicants who were younger and less qualified than Goods were selected for the jobs. *Id.* ¶¶ 20.  Goods submitted a protest to the Baltimore City Department of Human Resources ("Human Resources") but received no response.[1] *Id.* ¶ 20.

Months later, a newly promoted GIS Analyst took over lead supervisory duties for all of the consolidated GIS personnel. *Id.* ¶ 21.  Goods informed upper management that he and another GIS Technician had to work outside of their job description and perform tasks that "exceeded the level of responsibility of the lead GIS analyst," which he deemed to be a "classification error" warranting an increase in their pay. *Id.* ¶ 22.  Goods submitted a request for an "Out-of-Title" pay adjustment, and was told that the Assistant Director of Transportation had ordered a "desk audit" to assess the issue. *Id.* ¶¶ 22-23.

One year later, in or around July of 2017, Human Resources issued the results of the "desk audit" in which it determined that GIS personnel were properly classified. *Id.* ¶ 25; ECF 30-8. Following advice from Human Resources, Goods filed a "Request for Reconsideration," but again, he never received a response. *Id.* ¶ 26; ECF 30-9.

In February of 2017, the City posted a position for GIS Analyst in the Department of Public Works. ECF 30-11. Goods timely applied. ECF 30-13.  Per its standard practice, the City issued Goods a "notice of eligibility letter" dated March 30, 2017. ECF 30-14.  That letter stated:

> The Baltimore City Department of Human Resources has found you eligible for appointment in the class of GIS Analyst – Department of Public Works.  Your name will remain on this eligible list for at least one year. . . . If you are not contacted and or selected during the life of the list, you will need to reapply when the position is posted to remain on an active eligible list.

---

[1] Goods does not specifically allege that his "protest" included allegations that he was denied an interview as a result of his age or race, but for the purposes of this Motion, this Court will draw that inference in Goods's favor. *See id.* ¶ 20.  Regardless, no discrimination claims related to the 2013 hiring decisions remain viable because they are time-barred.

*Id.* During Goods's period of eligibility, the Department of Transportation-Conduit requested the names of the individuals on the eligibility list for GIS Analyst. Fifty-seven names appeared on the list. ECF 30-12. On February 9, 2018, DOT-Conduit invited seven individuals, including Goods, to interview for the vacant position. ECF 30-15. Only two of the candidates accepted the interview: Goods and Rafael Rios. ECF 30-16. A three-member panel interviewed both candidates, using standardized questions and an evaluation form providing for a maximum score of 100. ECF 30-25. Following the interviews, DOT management declined to extend an offer to either candidate, because neither achieved the City's desired minimum interview score of 70. ECF 30-10. Rios's average score was 59 and Goods's was 46. ECF 30-16. The position was reannounced, and the subsequent round of interviews resulted in the hiring of two younger candidates.

DOT-Conduit conducted additional interviews for vacant GIS Analyst positions on July 24, 2018 and August 2, 2018. The active eligibility list used for those positions had a lifespan of April 24, 2018 through October 31, 2018. Goods did not appear on that list because he had not reapplied following the expiration of his eligibility on March 28, 2018. Goods eventually reapplied on November 30, 2018 and was issued a new notice of eligibility dated January 25, 2019.[2]

---

[2] As a result of a change in procedures, the lifespan of a DHR eligibility list in 2019 was only six months. While Goods suggests that he received insufficient notice of that change, it is not material to any of the events at issue in this motion, since all of the openings and interviews occurred before January 25, 2019. In other words, the reduction of the eligibility window from one year to six months did not prevent Goods from obtaining any position posted in 2018.

### III.    STANDARD OF REVIEW

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The moving party bears the burden of showing that there is no genuine dispute of material facts.  *See Casey v. Geek Squad*, 823 F. Supp. 2d 334, 348 (D. Md. 2011) (citing *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987)).  If the moving party establishes that there is no evidence to support the non-moving party's case, the burden then shifts to the non-moving party to proffer specific facts to show a genuine issue exists for trial.  *Id.*  The non-moving party must provide enough admissible evidence to "carry the burden of proof in [its] claim at trial."  *Id.* at 349 (quoting *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1315-16 (4th Cir. 1993)).  The mere existence of a "scintilla of evidence" in support of the non-moving party's position will be insufficient; there must be evidence on which the jury could reasonably find in its favor.  *Id.* at 348 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986)).  Moreover, a genuine issue of material fact cannot rest on "mere speculation, or building one inference upon another."  *Id.* at 349 (quoting *Miskin v. Baxter Healthcare Corp.*, 107 F. Supp. 2d 669, 671 (D. Md. 1999)).

Additionally, summary judgment shall be warranted if the non-moving party fails to provide evidence that establishes an essential element of the case.  *Id.* at 352.  The non-moving party "must produce competent evidence on each element of [its] claim."  *Id.* at 348-49 (quoting *Miskin*, 107 F. Supp. 2d at 671).  If the non-moving party fails to do so, "there can be no genuine issue as to any material fact," because the failure to prove an essential element of the case "necessarily renders all other facts immaterial."  *Id.* at 352 (quoting *Coleman v. United States*, 369 F. App'x 459, 461 (4th Cir. 2010) (unpublished)).  In ruling on a motion for summary judgment, a court must view all of the facts, including reasonable inferences to be drawn from them, "in the

light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)).

In reviewing Defendant's summary judgment motion, the Court also considers Goods's status as a self-represented plaintiff:

> In *Bullock v. Sweeney*, 644 F. Supp. 507, 508 (N.D. Cal. 1986), the court found that a pro se plaintiff's pleadings and motions must be liberally construed. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972) (writings by pro se complainants held to "less stringent standards than formal pleadings drafted by lawyers"); *Jones v. Johnson*, 781 F.2d 769, 771 (9th Cir. 1986); *Baumann v. United States*, 692 F.2d 565, 572 (9th Cir. 1982).

*See Wall v. AT & T Technologies, Inc.*, 754 F. Supp. 1084, 1089 (M.D.N.C. 1990). Although the Court applies that more liberal standard in reviewing a pro se response to a defendant's summary judgment motion, the pro se plaintiff "may not rest on [his] pleadings, but must demonstrate that specific, material facts exist that give rise to a genuine issue" to be tried before a jury. *Harleysville Mut. Ins. Co. v. Packer*, 60 F.3d 1116, 1120 (4th Cir.1995) (citations omitted); *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994), *cert. denied*, 513 U.S. 813 (1994).

## IV. DISCUSSION

Goods alleges claims for race-based discrimination in Counts II and VI, under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, and 42 U.S.C. § 1981, along with a claim in Count IV for age-based discrimination under the ADEA. ECF 21. Under Title VII, it is unlawful for an employer to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . race.". 42 U.S.C. § 2000e-2(a)(1). Relevant to Goods's claims here, "in order to prove a prima facie case of discriminatory failure to hire or promote under Title VII, a plaintiff must prove that: (1) he is a member of a protected

group; (2) he applied for the position in question; (3) he was qualified for the position; and (4) he was rejected for the position under circumstances giving rise to an inference of unlawful discrimination." *Brown v. McLean*, 159 F.3d 898, 902 (4th Cir. 1998); *see also Henson v. Liggett Grp., Inc.*, 61 F.3d 270, 274 (4th Cir. 1995) (listing similar elements for a prima facie case of failure to hire under the ADEA); *White v. BFI Waste Servs.*, 375 F.3d 288, 295 (4th Cir. 2004) (requiring the same elements be shown to establish a *prima facie* case of racial discrimination whether under Title VII or § 1981).

Goods simply has not adduced evidence to satisfy those legal standards as to any of his three alleged discriminatory events: (1) the desk audit considering whether GIS Technicians and GIS Analysts should be reclassified; (2) the February 2018 GIS Analyst hiring process; or (3) the GIS Analyst interviews and hiring conducted in the summer of 2018.  Each event is addressed below.

**A.  The Desk Audit**

Goods asserts that the desk audit was discriminatory because it did not result in reclassification of the GIT Technician positions to the same salary grade as GIS Analysts.  Good posits that the GIS Technicians were older African American employees, whereas none of the GIS Analysts, who were paid more money, were African American.  However, he has presented no evidence, in terms of witness declarations, deposition testimony, or documentary exhibits, to suggest that there was any discrimination in the reclassification evaluation.  The evidence before the Court, ECF 30-8, consists of the determination letter dated July 17, 2017, which describes the way in which the evaluation was conducted and the conclusion that it reached.  For example, while Goods alleges that he was "not allowed to participate in the desk audit," ECF 34 at 5, the memorandum makes clear that the evaluators met "personally separately with two of the

incumbents randomly selected – one Technician and one Analyst – at the employee's workstation for an in depth review and discussion of position responsibilities and demonstrations led by the individual." ECF 30-8. Thus, the only evidence that could support Goods's position is the fact that only African-American employees held the GIS Technician positions and only non-African-American employees held GIS Analyst positions. Even as to that, Goods does not support his assertion with evidence in admissible form, despite the fact that Goods was specifically permitted additional time to seek written discovery pertaining to the desk audit. Ultimately, his evidentiary showing is insufficient to meet his burden to show a genuine issue of material fact at the summary judgment stage.

### B. The February 2018 Promotion Process

While Goods concedes that he received only a 46 average interview score following his interview in February, 2018, he asserts that the interview questions were unfairly formulated to focus on areas other than his area of expertise, and that the panel members lacked sufficient technical knowledge to fairly evaluate the candidates' answers. ECF 46 at 4-5. He has adduced, however, no evidence outside of his own conclusory assertions to substantiate those contentions. He offers no declarations or deposition testimony from knowledgeable persons about the qualifications of the panel members, or the validity of the questions posed.[3] Once again, the process pertaining to this job posting was within the scope of the supplemental discovery permitted

---

[3] In his supplemental filing following the additional discovery authorized by the Court, Goods continued to assert that he had not received sufficient discovery to prove his claims and that summary judgment should be denied pursuant to Fed. R. Civ. P. 56(d). ECF 46. That rule is customarily employed when a party has not yet completed discovery. Here, the discovery period has concluded, and in fact Plaintiff was permitted certain supplemental discovery extending past the discovery deadline. There is therefore no basis to defer ruling on a summary judgment motion, because no further discovery will take place.

by this Court.  In the absence of a proffer of admissible evidence demonstrating discrimination on the basis of race or age, Goods has not met his burden to show a genuine issue of material fact.

### C.  Hiring in the Summer of 2018

Finally, the uncontroverted evidence establishes that Goods had not applied for a spot on the eligibility list that was used for GIS Analyst hiring in July and August of 2018.  Per the letter Goods had received, he had been clearly advised that his eligibility would expire one year from March 30, 2017.  He adduces no evidence suggesting that he was somehow prevented from reapplication.  Accordingly, as to the positions posted in the summer of 2018, Goods cannot show that he "applied for the position[s] in question," which is a necessary element of his failure to promote claim.  *Brown*, 159 F.3d at 902.

### V.       CONCLUSION

For the reasons set forth above, the City's Motion for Summary Judgment, ECF 30, is GRANTED.  A separate Order of Judgment follows.


Dated:  September 8, 2021                                    _____/s/_____
                                                           Stephanie A. Gallagher
                                                           United States District Judge